UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STANLEY G. HAZELRIGG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:14-CV-1319-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Stanley G. Hazelrigg ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

I. **FACTUAL BACKGROUND**

At his first hearing before an administrative law judge ("ALJ") in September 2010, Plaintiff testified as follows. Between 1994 and May 2008, Plaintiff worked as a warehouse manager. (Tr. 64-65). In September 2007, Plaintiff developed a herniated disc in his lower back.

1

(Tr. 64). He tried to keep working, but his pain got too bad, he started missing too many days, and he stopped working. (Tr. 63-64). Additionally, at some point in 2008, he started developing "pains throughout [his] body" that started with his legs and feet and gradually went to his entire body. (Tr. 67). He takes tramadol, Norco, and Cymbalta for the pain. (Tr. 67-69). With the pills, his pain is a 7 on a scale of 1 to 10. (Tr. 71-72). It hurts to move, he is uncomfortable sitting for more than 20 minutes, and he can only stand and walk for five to ten minutes. (Tr. 72-74). He spends at least 90% of his time lying down. (Tr. 72). Plaintiff lives alone and prepares his meals, but it is difficult. (Tr. 74). It is difficult for him to get in the shower. (Tr. 72).

At the hearing before the second ALJ in January 2013, Plaintiff testified as follows. His whole body pain had increased since his last hearing. (Tr. 39). His neck pain radiates to his right arm and causes a burning. (Tr. 41-42). He lies down about 90% of the time, to relieve pain. (Tr. 45). He washes the dishes at home when he feels like he can try it, but he loses feeling and strength in his hands after a few minutes. (Tr. 42). He goes to the grocery store and can spend around 20 minutes there. (Tr. 46). He has trouble making food a lot of the time, and his parents bring him food. (Tr. 40).

Plaintiff's medical records show that he has been regularly reporting back pain and/or whole body pain to his treatment providers since 2007. Since then, Plaintiff has received frequent and extensive treatment for his back and whole body pain, including lower back surgery (Tr. 880-81); numerous narcotic and non-narcotic prescription medications, including a Fentanyl patch (Tr. 638, 645, 649, 651-53, 656-68, 666), Vicodin (Tr. 645), Oxycontin (Tr. 672), Oxycodone (Tr. 679), Norco (Tr. 447-59, 638, 649, 651-53, 656-68, 669, 979, 1037, 1161, 1170-71), hydrocodone (Tr. 1219, 1123, 1232), Cymbalta (Tr. 669, 672, 1057, 1123, 1170-71, 1219, 1221), gabapentin (Tr. 666, 669, 1170-71, 1161), venlafaxine (Tr. 1229), tramadol (Tr. 940,

1057, 1123, 1170-71, 1219, 1232), Flexeril (Tr. 940), robaxin (Tr. 1161), and Savella (Tr.1161).[1] He has also at various times undergone chiropractic treatment (Tr. 464); epidural injections (Tr. 464); trigger point injections (Tr. 1175-76); physical therapy (Tr. 939); massage therapy (Tr. 936); and use of a TENS unit. (Tr. 936). His primary care physicians have referred him to rheumatologists, neurologists, psychiatrists, and pain management specialists. (Tr. 461, 669, 935, 1037, 1064). He reported improvement shortly after his September 2009 surgery (Tr. 937), but after a few months his pain increased again.

Diagnostic imaging of Plaintiff's back has generally shown only mild degenerative changes, with some annular tearing. (Tr. 431-32, 433-34, 505, 506, 508-09, 612, 704, 768, 775, 1034, 1036). Physical examination findings and observations have been mixed, with some positive findings, including slow gait or limp (Tr. 436, 1031, 1213); a need to lie down during examination (Tr. 592); forwardly displaced shoulders (Tr. 1155, 1166, 1169, 1172, 1177, 1180), spinal or shoulder tenderness (Tr. 437, 1155-56, 1161, 1167,1177, 1180-81); inability to walk for more than six minutes to perform a test (Tr. 981); restricted range of motion or pain with range of motion (Tr. 439, 1160, 1170-71, 1172, 1167, 1178, 1181); decreased strength (Tr. 602); or decreased sensation (Tr. 1178, 1181). However, several examinations and observations have revealed mostly normal or unremarkable results. (Tr. 440, 603-04, 703-06, 1155, 1166).

Plaintiff's diagnoses have included chronic pain or chronic pain syndrome (Tr. 934, 1030, 1038, 1051, 1060, 1065, 1112-19, 1193, 1205, 1215, 1229, 1230); chronic/recurrent neck pain with mild degenerative disk disease (Tr. 1141); degenerative disc disease at L4-5 with chronic back pain (Tr. 582, 1141); neck pain with radiation (Tr. 583); chronic cervical spine and upper back pain (Tr. 569), cervical spine dysfunction or spondylosis (Tr. 569, 1112-19);

---

[1] The Court's citations are to illustrative examples and are not intended to be comprehensive.

moderate to severe foraminal stenosis at C5-6 (Tr. 569); myofascial pain (Tr. 569, 1167, 1170-71);[2] and depression (657, 705, 442-43, 666, 668, 1031, 1052, 1037). Several of Plaintiff's physicians have noted that the precise etiology of Plaintiff's pain is unclear and that his pain does not appear to be entirely discogenic in nature. (Tr. 447-59, 667, 671, 1153, 1170, 1178, 1164). Although some providers have suggested that he may have fibromyalgia (Tr. 1153, 1161), his tender points examination was negative. (Tr. 938). Several of Plaintiff's physicians have noted that they believe Plaintiff's pain has a significant psychiatric component and is related to his depression. In January 2009, Dr. Greco wrote, in discussing Plaintiff's pain, "Per ortho, they think [Plaintiff] may have a significant Psych component and I agree." (Tr. 669). In February 2010, Dr. Huott wrote, "Plaintiff is in chronic pain and his prognosis at this point is guarded for return to normal function. Depression is likely contributing." (Tr. 1082). In June 29, 2010, Dr. Huott wrote, "Since pain and depression go hand in hand, and [Plaintiff] seems to be clinically depressed, I recommend that he see a psychologist and possibly even get under the care of a psychiatrist." (Tr. 1037). In July 2010, Dr. Wright noted that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. (Tr. 1117). On April 23, 2012, Dr. Dunteman wrote, "Unfortunately, [Plaintiff] remains somewhat complex due to severe degenerative cervical spine disease, as well as possible behavioral overlay as it is associated with his disability." (Tr. 1173). Plaintiff's physicians have recommended that he see a psychiatrist, but he has not done so. (Tr. 668, 1037). Plaintiff's physicians have prescribed Cymbalta with the goal of addressing both Plaintiff's depression and pain. (Tr. 669).

---

[2] Myofascial pain syndrome is a chronic pain disorder in which "pressure on sensitive points in your muscles (trigger points) causes pain in seemingly unrelated parts of your body." http://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/basics/definition/con-20033195 (last visited September 27, 2015).

The record contains medical opinions from two of Plaintiff's treating physicians. In July 2010, Dr. Cheryl Wright opined that because of Plaintiff's chronic pain syndrome, cervical spondylosis, and low back pain, Plaintiff could only sit for up to one hour and stand for up to one hour in an eight-hour workday; that his ability to perform repetitive reaching, handling, and fingering was significantly limited due to muscle weakness and pain; that his condition interfered with his ability to maintain a constant neck position; that his pain was severe enough to constantly interfere with attention and concentration; and that he would need breaks at 15-minute intervals. (Tr. 1115-17). She stated that Plaintiff's symptoms and functional limitations were reasonably consistent with his physical and emotional impairments, that emotional factors contributed to the severity of his pain, and that he was not a malingerer. (Tr. 1117-19). On February 1, 2011, Dr. Wright wrote a letter referencing and confirming these opinions. (Tr. 1149-50).

In July 2009 (before Plaintiff's September 2009 surgery), treating physician Dr. Rebecca Greco summarized Plaintiff's treatment history and opined that Plaintiff had pain that made it difficult for him to walk, stand, or move his head; had muscle weakness and atrophy; took potent medications that made him sleep through entire days at a time; and could not perform significant work. (Tr. 590-93). In March 2011, Dr. Greco reviewed Plaintiff's treatment history and opined that due to incapacitating fibromyalgia, he was not comfortable sitting still or moving, was incapable of doing anything more than waiting for his next dose of medication, and could not work. (Tr. 1153).

On November 23, 2010, a consulting, non-examining orthopedic surgeon, Dr. Gurvey, reviewed Plaintiff's medical records and produced an opinion that Plaintiff was capable of sitting for two hours continuously and six hours total in an eight-hour workday; standing for two hours

continuously and six hour total; walking for two hours continuously and six hours total; never climbing ladders or scaffolds; and occasionally climbing stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 1133-38).

In December 2009, two non-examining state agency medical consultants opined that Plaintiff did not have any severe mental impairments. (Tr. 788-98, 812-13).

## II. PROCEDURAL BACKGROUND

On March 20, 2009, Plaintiff applied for DIB, alleging inability to work due to back disorders and affective (mood) disorders. (Tr. 25, 103-04). His application was denied initially and on reconsideration. (Tr. 128-32, 134-38). On January 29, 2010, Plaintiff filed a Request for Hearing by Administrative Law Judge. (Tr. 139). At a hearing before the ALJ, Plaintiff amended his onset date to May 1, 2008. (Tr. 64). After the hearing, an ALJ found Plaintiff was not under a disability as defined in the Act, and Plaintiff requested review of that decision from the Appeals Council of the Social Security Administration. (Tr. 12, 105-18, 209-11). On September 19, 2012, the Appeals Council granted Plaintiff's request for review, and it remanded the matter to an ALJ for further proceedings. (Tr. 12, 95-99, 123-27). On January 28, 2013, following another hearing, a different ALJ found that Plaintiff was not under disability as defined in the Act. (Tr. 9-25). On May 28, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled

a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

7

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### IV.  THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013; that Plaintiff has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date; that Plaintiff had the severe impairments of back pain status post anterior lumbar interbody fusion at L4-5 and mild degenerative disc disease at C5-6; and that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 13-16). The ALJ found that Plaintiff has the RFC to perform "a range of light work as defined in 20 CFR 404.1567(b) in that he can lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours out of an eight-hour workday, and stand or walk for six hours out of an eight-hour workday, but he is limited to occasional crawling, no work on ropes, tall ladders or scaffolds, and no unprotected heights, hazardous machinery and driving." (Tr. 16). The ALJ found Plaintiff was capable of performing his past relevant work as a retail sales and warehouse manager and concluded that he had not been under a disability from May 1, 2008, through the date of his decision (January 28, 2013). (Tr. 24-25).

## V. DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to properly consider Plaintiff's subjective complaints of pain, (2) the ALJ failed to properly consider all of Plaintiff's severe impairments at Step Two, (3) the ALJ failed to properly consider the opinion evidence in the record; and (4) the ALJ's decision is not supported by substantial evidence in light of new evidence submitted to the Appeals Council.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting

*Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B. The ALJ's Assessment of Plaintiff's Subjective Complaints of Pain

Plaintiff first argues that the ALJ failed to properly consider his subjective complaints of pain. Specifically, Plaintiff argues that because the ALJ failed to recognize the role Plaintiff's psychological conditions of depression and chronic pain syndrome played in contributing to his physical pain, the ALJ's credibility determination and RFC are not supported by substantial evidence. The Court agrees.

Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility based on the evidence as a whole, including the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). The factors to be considered include "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's

complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "'An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.'" *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). The ALJ's credibility determination must be "supported by good reasons and substantial evidence." *See Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (quotation marks omitted). "When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints of pain under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). However, the court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

This is a case whose outcome depends largely on the assessment of the credibility of Plaintiff's subjective complaints of disabling pain. However, it does not appear from the ALJ's decision that he properly considered the above factors in light of all of the evidence. The ALJ did not cite *Polaski* and did not set forth the required factors. The ALJ's credibility analysis does not contain any express discussion how most of these factors affected the ALJ view of Plaintiff's credibility, including the duration, intensity, and frequency of pain; the precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; and the claimant's work history. (Tr. 20). The Court notes that several of those

11

factors appear to favor Plaintiff's credibility, including Plaintiff's frequent reports of intense pain; Plaintiff's extensive history of prescription medications; the functional limitations noted by his treating physicians, Dr. Greco and Dr. Wright; and his positive work history as a warehouse manager prior to the onset of his back pain in the fall of 2007.

Moreover, as to the two factors the ALJ did expressly address in the credibility analysis (inconsistent reports regarding daily activities and objective medical evidence), the ALJ's assessment does not appear to be fully supported by the record. First, the ALJ's discussion of inconsistencies in Plaintiff's reported daily activities does not appear to be supported by the record. The ALJ found that Plaintiff's allegation that he has to lie down more than 90% of the day was inconsistent with Dr. Greco's January 2010 note that surgery had improved Plaintiff's pain and he was no longer sleeping through entire days due to pain and narcotics. (Tr. 20, 937). However, the Court sees no inconsistency. In his testimony, Plaintiff did not allege that he *sleeps* all day, but rather that he must *lie down* most of the day because standing, sitting, and moving are painful. (Tr. 45, 72). Moreover, although Plaintiff did report improvement shortly after his surgery, he subsequently continued to report severe pain.

The ALJ also found that Plaintiff's reports of grossly restricted daily activities were out of proportion to treating source evidence, because Plaintiff reported to his doctor on a check-box form in April 2008 that he was able to "look after himself normally" with regard to his personal care (washing, dressing, etc.). (Tr. 458). However, on the same form, Plaintiff indicated that although he could look after himself, it was "very painful" to do so; that he had severe pain; and that his pain prevented him from standing more than 10 minutes, and that he had spent most of his time in bed. (Tr. 458). Plaintiff's statements on the April 2008 form are entirely consistent with his testimony that he lies down most of the time but is able to stand for periods of a few

12

minutes and do activities such as showering and washing dishes with pain and difficulty. (Tr. 42, 45, 72). And all of these statements seem inconsistent with an ability to perform the demands of light work.

Second, the ALJ's assessment of the inconsistencies between the objective medical evidence and Plaintiff's complaints is not entirely supported by the record. The ALJ pointed out that Plaintiff's allegations were inconsistent with the "minimal findings on lumbar and cervical spine MRIs" and noted that Plaintiff's treating specialists had "agreed the claimant's alleged whole body pain is not discogenic." (Tr. 20). The ALJ properly recognized that objective medical evidence that fails to substantiate a Plaintiff's complaints is one proper consideration to use in assessing Plaintiff's credibility. *See, e.g.*, *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints). However, as Plaintiff points out, it appears that the ALJ did not consider objective medical evidence that *does* support Plaintiff's complaints of pain: Plaintiff's consistent diagnoses of chronic pain syndrome, myofascial pain, and depression, and Plaintiff's history of aggressive medical and surgical treatment for pain. In *Cox v. Apfel*, the Eighth Circuit made it clear that even where a claimant's physicians have been unable to identify a specific physical cause for the amount of pain claimed, diagnoses of depression and/or chronic pain syndrome can constitute objective medical evidence of pain, particularly when combined with a history of pain management and drug therapy. 160 F.3d 1203, 1207-08 (8th Cir. 1998). Reversing the ALJ's decision to discount allegations of pain based on a lack of objective findings and a clear explanation for Plaintiff's pain, the Eighth Circuit stated:

> While it is true that physicians have been unable to identify a specific physical cause for the amount of pain claimed by Cox, she has been repeatedly diagnosed

13

> with chronic low back pain and depression which cause her to feel exaggerated levels of pain. Depression, diagnosed by a medical professional, is objective medical evidence of pain to the same extent as an X-ray film. *See* 20 C.F.R. §§ 404.1508, 404.1528. Another objective medical fact supporting Cox's subjective complaints of pain is the consistent diagnosis of chronic lower back pain, coupled with a long history of pain management and drug therapy, including the implantation of the intrathecal morphine pump. It is obvious that physicians have determined Cox was experiencing great pain. *See Bakalarski v. Apfel*, No. 97–1107, 1997 WL 748653 (10th Cir. 1997) (consistent diagnosis of chronic pain syndrome can serve as an objective basis for pain).

*Id. See also O'Donnell v. Barnhart* 318 F.3d 811, 818 (8th Cir. 2003) (remanding and noting that "from the medical records as a whole, it appears that although the physicians 'have been unable to identify a specific physical cause for the amount of pain claimed by [O'Donnell], . . . [i]t is obvious that [they] have determined [she] was experiencing great pain." (quoting *Cox*, 160 F.3d at 1207-08). *Cf. Reinhart v. Sec'y of Health & Human Servs.*, 733 F.2d 571, 572 (8th Cir. 1984) (reversing and remanding where the ALJ focused on the normal laboratory testing regarding the claimant's spine and paid only "lip service" to evidence that Plaintiff had diagnoses of a psychological illness that could be causing her pain).

Here, as in *Cox*, Plaintiff's physicians were unable to identify a specific physical cause for the severity of the pain claimed by Plaintiff. However, as in *Cox*, Plaintiff's physicians repeatedly diagnosed him with chronic pain syndrome (Tr. 934, 1038, 1030, 1051, 1065, 1060, 1112-19, 1193, 1205, 1215, 1229, 1230), depression (442-43, 657, 666, 668, 705, 1031, 1037, 1052), and/or myofascial pain syndrome (Tr. 570, 1167, 1170-71). In addition, as discussed above, several of his treating doctors noted that his depression or other psychological issues were likely contributing to his pain. (Tr. 669, 1037, 1082, 1117, 1173). Also as in *Cox*, Plaintiff's physicians' aggressive treatment of Plaintiff's pain with surgery, narcotic and non-narcotic medications, psychogenic medications (such as Cymbalta), and other interventions constitutes

14

objective evidence of his pain. With one exception in July 2012, Plaintiff's physicians have not questioned that he is experiencing great pain, even though they have not determined its precise cause.[3] They have consistently found that his clinical presentation warrants significant interventions, including surgery and strong pain medication.

The Commissioner argues that the ALJ properly considered the above evidence by noting that Plaintiff's treating physicians had recommended that Plaintiff see a psychiatrist but he did not do so. (Tr. 20). The Court acknowledges that a claimant's refusal to follow treatment recommendations is a proper consideration in the credibility analysis. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). However, the record here suggests that Plaintiff did not see a psychiatrist because he believed that his problems were physical in nature—he continued to aggressively seek treatment for his pain from his primary care physician, pain management specialist, and neurologist. Moreover, Plaintiff's refusal to see a psychiatrist does not undermine the objective fact that his *physicians* believed that his pain was (at least in part) psychogenic in origin, nor does it undermine the objective facts regarding Plaintiff's diagnoses of chronic pain syndrome and myofascial pain syndrome or the objective facts regarding Plaintiff's extensive history of drug and other therapies for his reported pain.

For all of the above reasons, the Court cannot say that the ALJ conducted a proper credibility analysis, supported by substantial evidence. Plaintiff's complaints, if found credible, suggest limitations that would preclude a finding that Plaintiff is capable of light work. Thus, remand is required. On remand, the ALJ should conduct a credibility analysis in which he makes

---

[3] In July 2012, Dr. Dunteman noted that "symptom magnification is considered" (Tr. 1167), and in August 2012, he noted that Plaintiff's questions about Norco "raises a question of possible opioid dependence, and seeking behavior." (Tr. 1164). However, Dr. Dunteman did not mention symptom magnification at later visits, and no other treatment providers suggested that Plaintiff was feigning symptoms of pain. In addition, Dr. Wright specifically noted that Plaintiff was not a malingerer. (Tr. 1117).

it clear that he has considered all of the relevant credibility factors and all of the medical evidence regarding Plaintiff's limitations.

### C. The ALJ's Assessment of Plaintiff's Severe Impairments at Step Two

Plaintiff next argues that the ALJ erred by failing to include depression and/or chronic pain syndrome among Plaintiff's severe impairments at Step Two. To show that an impairment is severe, a claimant must show that he has a medically determinable impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1520(c), 404.1521(a).

In his decision, the ALJ determined that depression was not a severe impairment and did not consider whether Plaintiff's chronic pain syndrome was a severe impairment. For substantially the reasons stated above, there is significant evidence in the record suggesting that Plaintiff's chronic pain syndrome and/or depression significantly limited Plaintiff's ability to function in the workplace, and it does not appear that the ALJ properly considered all of that evidence. On remand, the ALJ should consider that evidence and determine whether either of these impairments is a severe impairment. *Cf. Becker v. Colvin*, No. 4:12CV82 FRB, 2013 WL 5337612, at *19-20 (E.D. Mo. Sept. 23, 2013) (remanding for the ALJ to determine whether chronic pain syndrome was a severe impairment even where the claimant had not alleged it as a basis for disability; emphasizing that the record was "replete with evidence of the existence of plaintiff's chronic pain," including diagnoses of chronic pain and treatment with narcotic medications, and that the claimant's treating physicians opined that her pain was psychiatric in nature).

### D. The ALJ's Assessment of the Opinions of Plaintiff's Treating Physicians

Plaintiff also argues that the ALJ failed to properly evaluate the opinions of his treating physicians, Dr. Greco and Dr. Wright, and erred by giving them "little weight" without providing good reasons for doing so.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(c)(2)). However, "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (internal quotation marks omitted). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). If a treating physician's opinion is not given controlling weight, the amount of weight given to it "is to be governed by a number of factors [contained in 20 C.F.R. § 404.1527(c)] including the examining relationship, the treatment relationship, consistency, specialization, and other factors." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (citations omitted).

The ALJ's discussion of Dr. Greco's opinion and Dr. Wright's opinion indicates that the ALJ discounted the opinions in significant part because they were based on Plaintiff's subjective complaints of pain and were not supported by scans or other objective medical evidence of pain. Thus, the ALJ's re-assessment on remand of Plaintiff's credibility and the objective evidence supporting Plaintiff's complaints of pain will affect his assessment of those opinions. On

remand, the ALJ should evaluate these opinions in light of the factors described in 20 C.F.R. § 404.1527(c) and the record as a whole.

### E. Additional Evidence Submitted to the Appeals Council

Plaintiff's final argument is that remand is required because the ALJ's decision is not supported by substantial evidence in light of the new, material evidence that was not before the ALJ but was submitted to the Appeals Council. Because the Court finds remand is required for other reasons, the Court need not reach this issue. On remand, the ALJ should consider all of the available evidence in the record, including that submitted to the Appeals Council.

### VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2015.